# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHELE HONOMICHL AND DONALD BROWN, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) CASE NO.: 09-CV-7218<br>) |
| INTEGRATED INTERNATIONAL PAYROLL LIMITED, a foreign corporation, | ) Judge Robert M. Dow, Jr.<br>)<br>) |
| Defendant. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Michele Honomichl and Donald Brown have filed a petition [1, Ex. 1] to stay an arbitration that Defendant Integrated International Payroll Limited initiated in October 2009. Plaintiffs subsequently filed two motions for summary judgment [12, 14], requesting that the Court rule in their favor with respect to their petition to stay the arbitration. For the following reasons, the Court denies both motions for summary judgment [12, 14] and determines that the parties may proceed to arbitration on both the Celergo and Summit Agreements.

**I.     Background**

Plaintiffs Michele Honomichl and Donald Brown are residents of Illinois. Defendant Integrated International Payroll Limited ("iiPay") is a corporation organized under the laws of the United Kingdom. Celergo LLC, not a party to this action, is a Delaware limited liability company authorized to do business in Illinois and having its principal place of business in Deerfield, Illinois. Summit Partners LLC ("Summit"), also not a party to this action, is an Illinois limited liability company with its principal place of business also in Deerfield, Illinois. Plaintiffs and iiPay are members of both Celergo and Summit. Plaintiffs are the current

managers of Celergo and also are the current managers of IOR/GPS, LLC, the manager of Summit.  On September 1, 2004, Plaintiffs (among others not parties to this action) executed the Summit Operating Agreement ("Summit Agreement"), which is governed by Illinois law, and in March 2007, iiPay executed an agreement to be bound by the Summit Agreement.  On January 2, 2009, Summit, iiPay, and Plaintiffs entered into an Amended and Restated Operating Agreement for Celergo ("Celergo Agreement"), which is governed by Delaware law.  Both the Celergo and Summit Agreements contain the same dispute resolution provision, which states:

> In the event there is a dispute as to the manner in which this Agreement is to operate, the dispute shall be resolved by binding arbitration, the expense of which (including reasonable attorney's fees) shall be borne by the party against whom, or against whose position in the dispute, the arbitrator decides.  If the parties cannot agree on the selection of an arbitrator of any such dispute within five (5) days of the date the dispute arises, an arbitrator shall be appointed by the American Arbitration Association.

Celergo Agreement § 14.02; Summit Agreement § 11.02.

On October 15, 2009, iiPay filed a demand for arbitration with the American Arbitration Association ("AAA").  iiPay alleges that Plaintiffs breached both the Celergo and Summit agreements by refusing iiPay's numerous requests to inspect and copy Celergo's and Summit's books and records upon reasonable notice in violation of § 10.01(a) of the Celergo Agreement and in violation of § 8.01 of the Summit Agreement.  iiPay further alleges that Plaintiffs have been compensating themselves since 2006 without unanimous agreement by the members, distributing other funds to pay their personal obligations without unanimous agreement by the members, and distributing other funds to pay their personal obligations without unanimous approval of the members, in violation of § 6.02 of the Celergo Agreement.  iiPay also alleges that Plaintiffs have diluted iiPay's membership in Summit in violation of the Summit Agreement,

2

which requires that no member may transfer an interest in Summit without first offering all the members a right of first refusal to purchase such interest.

On November 12, 2009, Plaintiffs filed their Verified Petition to Stay Arbitration in the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois, seeking a stay of the arbitration demands made by iiPay to the AAA. Counts I and II seek to stay arbitration as to iiPay's claims relating to Celergo and Summit, respectively. On November 17, 2009, iiPay removed the petition to this Court, and on December 7, 2009, iiPay filed its answer to the petition and counterclaim against Plaintiffs.[1] On January 6, 2010, Plaintiffs filed their answer to iiPay's counterclaim. Then, on January 19, 2010, Plaintiffs simultaneously filed two motions for summary judgment. The first motion for summary judgment [12] contends that the arbitration provisions in the Celergo and Summit agreements do not provide for arbitration of the issues raised by the parties. The second motion [14] contends that even if the agreements do provide for arbitration of these issues, iiPay, by its conduct in litigating this suit, has waived any right that it may have to arbitrate.

## II. Analysis

Plaintiffs contend that iiPay's claims do not fall within the scope of the parties' arbitration provisions, which relate to the manner in which the respective operating agreements are to operate. It is undisputed that the claims presented in iiPay's demand arise from alleged breaches of the Celergo and Summit Agreements. Thus, what the Court must determine is whether claims for breaches of the agreements lie within the scope of the arbitration provisions that require arbitration of disputes as to the manner in which the respective agreements are to

---

[1] iiPay contends that its counterclaim was filed as a compulsory counterclaim pursuant to Rule 13(a) of the Federal Rules of Civil Procedure.

"operate." And if the claims do fall within the scope of the arbitration provisions, the Court then must also determine whether iiPay has waived its right to arbitrate by engaging in this litigation.

### A. Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette, Ind.,* 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

4

### B. Arbitrability

#### 1. Threshold Question of Who Decides Arbitrability

As noted above, on October 15, 2009, prior to the initial filing of this litigation in state court, iiPay filed a Demand for Arbitration with the American Arbitration Association. Arbitrator Stuart M. Widman subsequently was appointed to hear the matter. Arbitrator Widman has met with the parties, entered a scheduling order, and issued pre-hearing orders, the most recent of which, Pre-Hearing Order No. 2, was issued on May 18, 2010. In short, proceedings in the arbitration matter and in this litigation have been proceeding in tandem since the commencement of both matters late last year.

As the Arbitrator has noted, neither party addresses in their summary judgment papers whether the question of arbitrability should be determined by the Arbitrator or by this Court. See Pre-Hearing Order No. 2 at 4 n.3. That threshold determination turns on whether the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, or the state arbitration codes control this action. The agreements do not specify whether the FAA or the state arbitration statutes apply, and the parties do not address the issue in their briefs. The Arbitrator concluded, and this Court agrees, that the FAA governs because the agreements involve interstate commerce. See 9 U.S.C. § 2; *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University*, 489 U.S. 468 (1989). However, "the Supreme Court has held that parties can opt out of the federal act," and choose to have state law apply, "provided the state arbitration statute does not contain provisions that would undermine the federal act's aim of facilitating the resolution of disputes involving maritime or interstate commerce by arbitration." *Edstrom Industries, Inc. v. Companion Life Ins. Co.*, 516 F.3d 546, 549 (7th Cir. 2008). See also *Volt*, 489 U.S. at 477. Here, both agreements contain broad choice of law provisions. See Celergo Agreement § 14.04

5

("This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware"); Summit Agreement § 8.8 ("This Agreement shall be subject to and governed by the laws of the State of Illinois"). Based on those choice of law provisions, the Arbitrator concluded that the parties intended for the state arbitration laws to apply.

Under both the FAA and Delaware arbitration law, the question of arbitrability is to be decided by the court, not the arbitrator, unless the parties clearly and unmistakably provide otherwise. See *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986); *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006). The Celergo Agreement contains no clear and unmistakable provision stating that arbitrability should be decided by an arbitrator. Therefore, regardless of whether federal or state arbitration law applies to the Celergo Agreement, the initial arbitrability determination as to that Agreement must be made by this Court.

In contrast to the FAA and Delaware law, the Illinois Uniform Arbitration Act (710 ILCS 5/1 *et seq.*) provides that the question of arbitrability initially should be decided by the arbitrator where, as in the Summit Agreement, "the language of an arbitration clause is broad and it is unclear whether the subject matter of the dispute falls within the scope of [the] arbitration agreement." *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr,* 530 N.E.2d 439, 444-5 (Ill. 1988). Here, the Arbitrator determined that he had jurisdiction to decide the arbitrability question as to the Summit Agreement. To the extent that the parties intended for the Illinois Act to apply, this Court agrees. However, even if the parties had intended for the FAA to apply – and thus the arbitrability question as to the Summit Agreement were for this Court to decide – the result would be the same. For, as explained below, the Court would reach the same conclusion in regard to the Summit contract as it reaches as to the Celergo contract – and that the

6

Arbitrator independently reached as to the Summit contract – namely, that the claims asserted in iiPay's Arbitration Demand do in fact lie within the scope of the agreement to arbitrate.

### 2. The Arbitrability Issue

Delaware cases (which govern the Celergo Agreement) and Illinois cases (which govern the Summit Agreement) both hold that whether claims are arbitrable is a matter of contract interpretation. See, *e.g.*, *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) ("Whether a particular issues is subject to arbitration is a matter of contract interpretation); *SBC Interactive, Inc. v. Corporate Media Partners*, 714 A.2d 758, 761 (Del. 1998) (same). Equally undisputable is the proposition that federal, Delaware, and Illinois law all share the same public policy that doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. See, *e.g.*, *Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444, 452 (2003) (If there is a doubt about the scope of arbitrable issues, courts "should resolve that doubt 'in favor of arbitration.'") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985)); *Carter v SSC Odin Operating Co*., --- N.E.2d ---, 2010 WL 1493626, at *10 (Ill. 2010) ("Illinois public policy favors arbitration as a means of dispute resolution"); *NAMA Holdings, LLC v. Related World Market Center, LLC,* 922 A.2d 417, 431 n. 30 (Del. Ch. 2007) (doubts about arbitrability should be resolved in favor of arbitration when a "reasonable" interpretation of an arbitration agreement points in that direction); *Zimmerman v. Illinois Farmers Ins. Co.*, 739 N.E.2d 990, 995 (2d Dist. 2000) ("arbitration is favored by the state, federal, and common law, and an arbitration agreement will be given as broad an interpretation as its language will allow"). In determining whether a particular dispute falls within the scope of an arbitration clause, a presumption of arbitrability exists such that arbitration should be compelled "unless it can be said with positive assurance that the arbitration clause is not

7

susceptible of an interpretation that covers the asserted dispute." *AT & T*, 475 U.S. at 650 (quoting *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-83 (1960)).

Plaintiffs argue that the alleged breaches of the agreements do not constitute a dispute as to how the agreements should "operate." For example, Plaintiffs point out that iiPay is not seeking to arbitrate whether iiPay has a right to access Celergo's and Summit's books and records upon reasonable notice – which Plaintiffs concede would be arbitrable. Rather, iiPay seeks to arbitrate whether Plaintiffs' refusal to comply with iiPay's demands constitutes a breach of the agreements – which Plaintiffs contend are not arbitrable issues. According to Plaintiffs, giving "plain meaning to the words 'how the Agreement[s] are to operate' does not permit a finding by this Court that this language, directly, indirectly, explicitly or implicitly provides for the arbitration of any dispute pertaining to an alleged breach of the Agreements." Pls. Mem. at 11.

iiPay agrees with Plaintiffs that iiPay's Demand alleges that Plaintiffs breached their obligations and duties under the Celergo and Summit agreements. However, iiPay disagrees with Plaintiffs over the arbitrability of such a dispute. According to iiPay, claims relating to Plaintiffs' failure to provide access to all books and records required under the agreements, or Plaintiffs compensating themselves without unanimous consent in violation of the Celergo Agreement, are disputes "as to the manner in which" the agreements are "to operate."

In interpreting a contract, language is to be given its plain and ordinary meaning. See *Dean Management, Inc. v. IBS Const., Inc.*, 790 N.E.2d 934, 940 (Ill. App. Ct. 2d Dist. 2003); *Hifn, Inc. v. Intel Corp.*, 2007 WL 2801393 (Del. Ch. 2007). The respective operating agreements require that "[i]n the event there is a dispute as to the manner in which this Agreement is to operate, the dispute shall be resolved by binding arbitration." The plain and

ordinary meaning of the term "operate" encompasses the performance of certain functions. See www.merriam-webster.com/dictionary/operation, last accessed on May 20, 2010. Here, iiPay alleges that Plaintiffs had certain duties or obligations under the agreement, and that they failed to perform those duties and obligations. In other words, iiPay contends that determining whether Plaintiffs have breached the operating agreements requires a determination as to the manner of operation of the agreements.

The arbitration clauses in the agreements, by their plain language, apply only to disputes concerning the operation of the agreement. However, the Court is persuaded that a dispute as to an alleged breach of an agreement reasonably implicates the manner in which such an agreement is to operate. See *First Allmerica Financial Life Ins. Co. v. Minnesota Life Ins. Co.*, 188 F.Supp.2d 101, 104-07 (D. Mass. 2002) (finding that an alleged breach of the parties' agreement was subject to an arbitration clause that required arbitration of disputes concerning the "operation" of the parties' agreement). For example, iiPay alleges that Plaintiffs failed to provide iiPay with access to the complete books and records to which it is entitled under both agreements. Plaintiffs, in turn, claim they are not required to provide iiPay with all documents which iiPay believes it is entitled under the respective operating agreements. Thus, the parties have a dispute as to the manner in which §§ 10.01 and 8.01 of the Celergo and Summit agreements, respectively, are to operate.

When parties agree to arbitrate disputes related to the manner in which an agreement is to operate, the scope of that agreement is sufficiently broad to include the arbitration of disputes relating to a parties' actual performance of their duties or obligations under the respective agreements, not merely whether parties should perform those duties or obligations in the abstract. In any event, even if another reading of the arbitration language were possible, it

certainly cannot be said "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Technologies,* 475 U.S. at 650 (1986). Finally, Plaintiffs have not identified any contrary provisions cutting against the highly plausible (and sensible) interpretation set forth above. *Cf. First Allmerica*, 188 F. Supp. 2d. at 104-05 (acknowledging that a second provision broadening the scope of arbitrable issues demonstrated the parties intention to limit that arbitrable issues with respect to the first provision). Thus, the claims are arbitrable.

### C. Waiver

In their second motion for summary judgment, Plaintiffs contend that even if the claims do fall within the scope of the arbitration provisions, iiPay has waived any right to arbitrate the claims before the arbitrator. Specifically, Plaintiffs insist that because iiPay filed an answer and a counterclaim, participated in the Rule 26(f) conference, drafted and filed the court-ordered agreed initial status report, and appeared before the Court in status hearings in this case, it has waived its right to arbitration.

As an initial matter, federal courts in this circuit have held that "waiver is not lightly inferred; the strong federal policy favoring enforcement of arbitration agreements impresses upon a party asserting waiver a heavy burden." *Williams v. Katten, Muchin & Zavis*, 837 F. Supp. 1430, 1442 (N.D. Ill. 1993); see also *Dickinson v. Heinold Secs., Inc.*, 661 F.2d 638, 641 (7th Cir. 1981) ("a waiver of arbitration is not lightly to be inferred"). Under Delaware law, "the waiver of a right to arbitrate requires an intentional relinquishment of the right demonstrated by knowledge of its existence, and actual manifestations of such intent through the actions of the party." *Unifirst Corp. v. Holloway's Trucking*, 2009 WL 2426329, at *2 (Del. Com. Pl. Aug. 5, 2009). "For a party to be found to have waived its right to arbitrate, it must have actively

participated in a lawsuit or take other action inconsistent with the right to arbitration." *Falcon Steel Co. v. Weber Eng'g Co., Inc.*, 517 A.2d 281, 288 (Del. Ct. Ch. 1986). Illinois law is similar, limiting waiver to cases in which "a party's conduct is so inconsistent with the arbitration clause as to demonstrate abandonment of that right or when the party submits arbitrable issues to the court for decision." *Bahuriak v. Bill Kay Chrysler Plymouth, Inc.*, 786 N.E.2d 1045, 1051 (Ill. App. Ct. 2d Dist. 2003). Illinois courts have held that when a party does no more than file a responsive pleading and comply with its obligations under court rules, that party does not waive any right to arbitrate. See *Jenkins v. Trinity Evangelical Lutheran Church*, 825 N.E.2d 1206, 1210 (Ill. App. Ct. 3d Dist. 2005) ("party does not waive its rights [to arbitrate] when it files a complaint, contests venue, or includes an affirmative defense of arbitration with a counterclaim in the alternative."); *Marzek v. Mori Milk & Ice Cream Co.*, 2002 WL 226761, at *2 (N.D. Ill. Feb. 13, 2002) (holding that defendants' filing of an answer with affirmative defenses, a counterclaim, and objections to plaintiff's notice and consent forms did not constitute a waiver of the agreement to arbitrate).

Although iiPay has responded to Plaintiffs' Petition to stay the arbitration initiated by iiPay in October 2009 – as required by the Federal Rules of Civil Procedure – iiPay has simultaneously proceeded with its arbitration demand. In December, AAA selected an arbitrator from a list of proposed arbitrators ranked by the parties, and in January 2010, the parties conferred with the arbitrator. Finally, as indicated by iiPay's May 19, 2010 filing, the arbitrator has deferred to this Court on the certain issues relating to arbitrability and all of Plaintiffs' contentions concerning waiver. Thus, iiPay's arbitration bid awaits this Court's rulings.

Under both Delaware and Illinois law, iiPay's conduct does not constitute waiver of its right to arbitration. Notably, Plaintiffs failed to cite any cases in which a party was found to

11

have waived its right to arbitrate after it initiated arbitration, but was then forced to respond to an opposing party's lawsuit seeking to stay that arbitration. iiPay's defensive litigation, coming after it initiated dispute resolution, does not equate with an "intentional relinquishment of the right" to arbitrate. *Unifirst Corp.*, 2009 WL 2426329, at *2; *Jacob v. C&M Video, Inc.*, 618 N.E.2d 1267, 1270 (Ill. App. Ct. 5th Dist. 1993) ("waiver of the right to arbitrate is disfavored * * * [w]aiver may occur, however, when a party acts in a manner inconsistent with the arbitration clause, thus indicating an abandonment of the right."). Far from "intentionally relinquishing" or "abandoning" its right to arbitrate, iiPay has persisted in its efforts to obtain resolution of its claims by arbitration. iiPay hardly can be faulted for protecting – or even advancing – its rights in the alternative litigation forum that it did not choose, particularly while questions relating to the forum in which the case would advance remained open.

Plaintiffs' argument that they have suffered prejudice from being forced to fight iiPay's allegations on "two fronts" also fails. Pls. Mem. at 8. The only reason that iiPay filed its answer and counterclaim in this Court was to respond to Plaintiffs' Petition. It was Plaintiffs who initiated the second "front," after iiPay already had demanded arbitration. Responding to litigation initiated by Plaintiffs, or acting as required under applicable rules, is not waiver of the right to arbitrate. See, *e.g.*, *Marzek*, 2002 WL 226761, at *2; *Edward Elec. Co. v. Automation, Inc.*, 518 N.E.2d 172, 177 (Ill. App. Ct. 1st Dist. 1987) (finding that party's "participation in the litigation was merely responsive").

## III. Conclusion

For the reasons stated above, the Court denies Plaintiffs' motions for summary judgment [12, 14] and determines that the parties may proceed to arbitration on both the Celergo and Summit Agreements.

Dated:  May 21, 2009

_____
Robert M. Dow, Jr.
United States District Judge